The Honorable Court, Justices, good morning. Michael Cristalli appearing on behalf of the appellant, Mr. Bowen. Justices, I know that you're very familiar with the line of cases that have recently come down with regard to this matter, specifically Turvin and Mendez. This case does not fit within a Turvin-Mendez analysis. Let me tell you my problems with the case so you can educate me on them. I guess there are some people here that have never gotten a speeding ticket, but there are some of us that have. And 10, 20 minutes seems just ordinary for a traffic ticket. He's following a semi too close. He's there for 15 or 18 to 21 minutes chatting about ridiculous nonsense, cop pretending to be anything wrong with that. And then it seems like the suspicion just grows. Some of it sounded phony, but the gasoline smell and the air freshener smell, very strong, didn't. So I don't actually see what's wrong with the stop. And it looks like there's a finding of fact and solid consent. Well, I disagree with Justice's position that 21 minutes is not unreasonable. You know the case better than I do. And I think I have some personal experience, although it's not part of the record. I would submit to the court that between seven and 14 minutes is more reasonable than 21 minutes. And I think if you look at the cases, specifically Chavez, Valenzuela, Mendez and Turville, all involve stops within seven to 14 minutes. No stop has ever been analyzed by this court or for that matter, I believe the 10 circuits precedent that has been outlined that suggests anything over that period of time is reasonable. Justice Kennedy must be a fast driver. He mentioned in a dissent a half hour. Yeah, I don't know. I would guess that it all depends on the circumstances. However, anything above, Your Honor, 10 minutes will be getting into an area of unreasonableness. What case do you have for that? I think in terms of over 10 minutes? Yeah. Well, I think Turville was 14 minutes. And the original stop in Turville, which is very interesting, was 10 minutes in terms of the traffic stop. The additional questioning in terms of the narcotics interrogation was only four minutes. In this case, you have a narcotics investigation that almost started immediately. In fact, Mr. Bowen was stopped between 756 and 757. He was asked immediately with regard to driver's license registration where he was headed, which is all fine. We concede to that point. However, almost a minute into the conversation, Officer Dutchover asked him to step out of the vehicle and begin to chit-chat with him. He says very specifically, can you come out of the vehicle and have a chit-chat? Now that's different. His assertion was pretextual. Yes. And that the only reason he stopped him for was because he wanted to check on the possibility of drugs. That's okay under Wren, isn't it? No. I think you still, though, in order to be able to go into a further investigation in terms of the narcotics, you have to, as articulated in Chavez Valenzuela, have reasonable suspicion to do that. And you have to go and do an analysis of the factors to determine whether or not there was reasonable suspicion that existed in order to justify the prolonged detention and the additional questioning. Well, my worry is that we get, you and others, get too worried about the minutes and we get unworried about what happens. It seems to me that the cases you've already said here are pretty straight, that one can ask or talk to the stop person for as long as it takes to get the potentials out of the way that they have to get by the radio. And they can ask any question during that time. If it takes longer to get the stuff from the radio back as to whether they have a ticket or not, that's the way it is. They can talk about anything until then. That's what Turbin says. So we get to that point and we're at a point where now the officer comes up and he says, you're free to go. Here's your stuff. Would you mind talking to me? And then that guy starts chit-and-chatting with him. And then after we get through that, he says, well, and then we get in, and he doesn't even stop. I mean, if I've ever seen an officer try to give this guy a chance to say, I'm through, this officer did. Every time he did it. Now, you don't have to do it. You don't have to do this. You're free to go. You don't have to consent. You don't have to do anything. I mean, in these kind of circumstances, it seems to me your client needed you. But he didn't need anything else. He was right there. He had, well, we could go through reasonable suspicion, but at the point where one is told he's free to go and then he continues to stand around, and he's even told again and again, where do we go? I would disagree with Justice's position with regard to the facts on that point. And with as long as you want, as long as it's within the scope of the traffic citation. I think it's still, there's an element of reasonableness in terms of executing those things that you need to execute for the purposes of the traffic citation. But in this case, immediately he asked Mr. Bowen to get out of the car, to do a chit-chat. This is one minute after the stop. He asked how much money he had on him. That is clearly in excess of the scope of a traffic violation as analyzed in Chavez-Valenzuela and the other precedent in this case. This is one minute after the stop. He then starts to talk to him about where he's coming from, where he's going, which I don't disagree with his ability to do that under the normal scope of the traffic citation. However, he continues to interrogate him with regard to very specifics about narcotics. And then he, within four minutes of the stop, I think it was a little bit longer than that, within 8.04, he starts to identify the officer, specific indicators as factors that would justify his reasonable suspicion to continue with the interrogation. So this is a situation where this officer is clearly trying to identify very objective, particularized factors in order to justify his interrogation, consistent with the ruling in Chavez-Valenzuela. And in the fine under United States v. Mendez, it says Chavez-Valenzuela is limited by Mueller-Rimina and to the extent it's inconsistent, it's overruled. Well it's over, it's not, I would point to the dissent in this circuit with regard to whether or not Chavez-Valenzuela was absolutely overturned. I think what Chavez-Valenzuela still stands for is reasonable suspicion. What Turvin and what Mendez has done has given officers an opportunity to ask questions within the scope of the traffic citation without developing further suspicion in order to justify them doing that. In this case you have suspicion out of the chute. I don't understand something here. I'm looking at page 1080 of U.S. v. Mendez and it says that Mendez had relied on our precedent holding that during a traffic stop a police officer may only ask questions reasonably related in scope to the justification of the traffic stop. And then it says the Supreme Court decided in Mueller that mere police questioning does not constitute a seizure unless it prolongs the detention. And then we say in United States v. Mendez to the extent that Chavez-Valenzuela and other cases hold that such questioning must be supported by separate reasonable suspicion, they have been overruled by Mueller. And I think the key question is that police officers have the ability to ask certain questions outside the scope of the traffic citation as long as it is reasonable and not unnecessarily prolonged. If you get into a situation where it becomes unnecessarily prolonged, then you still have an analysis under Chavez-Valenzuela where you have to identify the reasonable suspicion with the factors that are outlined in some of those cases. Okay. It comes down to time then. How many minutes do you have? We have 21 minutes from the time of the stop. But you have immediate questioning as with regard to narcotics investigation. And specifically this officer identifies that he was with the Southern Nevada Interdiction Task Force. Now granted he says that in regard to just doing massive amounts of traffic stops, but there's no question immediately after the stop he tried to identify or begin his interrogation with regard to narcotics. Well, but immediately upon stopping this guy, he finds an odor, a big odor of air freshener and a big odor of gas. And he's been on the task force and he knows what those kind of things are used to do. Then he looks in, just sees cars cluttered with potato chips, energy drinks, fruit drinks, two pairs of pants hanging in the car. He has the guy get out. Then he pats him down, looks for cash. The guy asks where he's from, he doesn't even know. Cali, that's the best he can say. Eventually says 134th Street. And we're saying that that officer then has no reason, I mean, he, after all of that, he takes all the papers back. Says get out of here. And then he says, but if you want to, we're going to talk to you about this. And the guy doesn't do anything. And then he goes further and finds more. Now it seems to me we're at a point where we're talking about what does an officer need to do to get that guy to know his rights and get out of there? Well, Justice, just to go backwards a little bit, as far as the consent is concerned, doing an analysis as whether or not the consent has been, any illegality has been purged by the consent, we say that it absolutely has not in this case. I know what you say, but I want you to speak to the situation. I mean, my colleague talked to you about Mendez, Mueller. I talked to you about Turvin, where it says mere questioning about other things is not violative. When he stops him, he says he can get out of there. And the guy does nothing. Well, he says at the 21-minute mark, he says, you can go now. He allows him to walk away and he says, hey, can I ask you some questions? Do I have any case cited that says 14 minutes, 12 minutes, 21 minutes, 10 minutes? Are we looking about the totality of the circumstances? And all you're trying to do is get me to see a case and establish that as a guideline. My guideline is totality of the circumstances and what they find, not minutes. Well, when you cite me a case that says something else. The only cases I can cite are the cases that we have, all of which are under or at 14 minutes from this circuit. And I would submit to the court that over that period of time would be unreasonable. In fact, with regard to an interrogation on Turvin that existed, it was only four minutes that was in addition to the questions related to the traffic stop. Four minutes of interrogation with regard to narcotics. This was 21 minutes of interrogation with regard to narcotics, which is unreasonable. And if you're going to do an analysis, I would submit to the court, you have to do one of reasonable suspicion under the circumstances. And we disagree that this officer had the necessary particularized objective factors to determine that there was reasonable suspicion that criminal activity was afoot. Thank you, counsel. Counsel. Good morning, and may it please the court. Robert Elman for the United States. Your Honor, there are three separate grounds, all of which would support affirming this case, and the all three of them to some degree. The call for the records went in at 8 a.m. exactly. And the Nevada Highway Patrol dispatcher returned the call in 11 minutes, so it would have been entirely impossible for Officer Dutchover to have completed this stop in much less time than he did. Turvin says that 14 minutes is not a problem. It's not too long. I refer to the danger in parsing this out so finely in terms of minutes and seconds is that it defies the direction of the case law toward totality and reasonableness. It takes you in the opposite direction. I also want to remind the panel that this is a rare circumstance in which there is a videotape of the entire stop. Both the magistrate judge and the district judge who passed on this case watched that videotape in its entirety, and both concluded that the stop was reasonable. As Judge Smith pointed out... Well, the stop was reasonable. The question now is whether to continue questioning after the stop. I mean, it was falling too close to a truck. That's pretty clear that the stop was correct. Now we're talking about the minutes. Okay. Well, as I total up the minutes, Your Honor, it's 17 minutes and 20 seconds from the time he stopped to the time that he is, that the officer is returning the paperwork. The key is what the time was between when he had reasonable suspicion to believe there was narcotics. That would be another basis. It is, and I think it's well-supported. There were six separate factors that support reasonable suspicion here, and the most important of those factors... Just so I'm clear on that, what was the time after the reasonable suspicion that you're just going to tell me about? The reasonable suspicion arises before the Nevada Highway Patrol dispatcher returns the call, and the difference there is about 11... Actually, it's about 12 minutes. At 7.56.30, the car's actually pulled over, and Mr. Cristales acknowledged that. It's at page 158 of the excerpts. His dispatch is called at 8 a.m., so we know that he's walked up to the car and taken Mr. Bowen out of the car by 8, and when he goes up to the car, he smells the gasoline. He smelled it almost immediately. He also smelled the overwhelming scent of the air freshener, both of which are indicators of drug trafficking. So at that point, there is at least a fair degree of reasonable suspicion that would have permitted questioning about drugs at that point, and it's about another 11 minutes from 8 o'clock before that highway patrol dispatcher returns the call. So it's the government's position... In my making, it seemed like there's a reasonable place for determining what time just for the stop, and after there was reasonable suspicion there was narcotics, then those additional minutes didn't seem to me to be counted into the validity of the stop. I agree entirely, Your Honor, and we're arguing that in the alternative, and always have been, that there are actually three, because even if you discounted both of those arguments, you'd still have the valid consent following it. But I think we're on the same page with respect to that. Let me see if I've got this right. Policeman reasonably suspects narcotics basically as soon as he walks up to the guy's car and smells all this cover-up smell. Agreed. And after that, it's just kind of a seduction, letting the dope dealer think that he's outsmarting a cop by pretending it's just a traffic stop, telling him he can leave and all that. But he's got his reasonable suspicion and support for a longer stop right from the get-go, as soon as he walks up to the car asking to get out. I agree, Your Honor. I'd only differ in terms of terminology. I'd call it police technique and methodology and protocol. But apart from that... We're in agreement. Very refined. I guess there are some other indications of narcotics that you're relying on besides those two. Correct. And I guess that's what I was trying to draw the distinction as to when the accumulation of evidence was there. Well, most of the other indicators, Your Honor, are almost immediately apparent as well. Mr. Bowen was taken out of the car before 8 a.m. So you're talking about two minutes from the stop. And Officer Dutchover noticed that he was breathing heavily and extremely nervous, which is also a point that Judge Mahan observed in watching the video. And I refer you to page 161 of the excerpts of record, because there's an exchange about exactly that point. And of course, Judge Mahan watched the videotape and disagreed with opposing counsel's characterization that Mr. Bowen was not unduly nervous. The clutter in the car... Do you get nervous when you're stopped by the police for speeding? Well, I don't. But I may be the exception. But here, what he says is extremely nervous. So I think there's a qualitative difference, Your Honor, between being somewhat nervous, which is expected and is normal, and being extremely nervous. The heavy breathing, for example, would add to that factor. I think that's all I have, unless there are other questions from the panel. None. Thank you. Thank you, counsel. United States v. Bowen is submitted.
judges: Hug, Kleinfeld, Smith